Edward F. McLaughlin, J.
Petitioner moves at Special Term by order to show cause pursuant to CPLR article 78 for an order in the nature of mandamus compelling the respondents to grant a public hearing to petitioner in regards to a requested rate increase and upon completion of said hearing, to prepare formal findings and a determination as to the amount of rate increase, if any, and granting a temporary rate increase to be held in escrow until a final determination is made and approved by the New York State Commission on Cable Television (hereinafter referred to as "Commission”).
Petitioner is a domestic corporation and successor-in-interest to Antenna-Vision, Inc. On June 1, 1964, Antenna Vision, Inc., was granted a 25-year franchise by the Village of Frankfort to operate a community antenna and closed circuit television system in said village. Said franchise agreement provided certain rates for commercial and noncommercial users of the system. Said agreement also provided in paragraph 17 that: "Any increase in rates shall be subject to review and approval by the Board of Trustees.” In December, 1970 and again in October, 1974 after public hearings were held, the respondents passed resolutions authorizing increases in rates over those provided for in the original franchise agreement. Said increases were later approved by the Commission.
In early spring 1976, petitioner determined that it was necessary, due to increased operating expenses, to request additional rate increases. It thereupon notified the eight municipalities in the area which it served, including the respondent and the Commission, of its request and asked that hearings be held thereon.
On April 27, 1976 and again on May 17, 1976, the Village of Frankfort by its Mayor and Trustee Maneen, and some officials of other municipalities, at meetings of the Mohawk Valley Mayors’ Conference, voted against granting a rate increase to petitioner. Said meetings were held in the City of Little Falls, New York, and petitioner was advised of the result on or about May 19, 1976. The resolution of the Mayors’ Conference denying petitioner’s requested rate increase was made without affording petitioner an opportunity to be heard *99 and without the presence of the Board of Trustees of respondent except for Mayor Pumilio and Trustee Maneen.
Thereafter, petitioner again requested respondents to hold a public hearing in connection with the requested rate increase so that consumers of the Village of Frankfort could have an opportunity to be heard and to have any questions answered. Thereafter at a meeting of the village board on June 17, 1976, respondents refused to discuss the factual merits of the requested rate increase and refused to schedule a public hearing, stating that petitioner could bring the matter on for review in "another year”. It is noted that respondents also refused to submit the matter to the Commission for determination pursuant to section 825 of the Executive Law which provides in part as follows:
"5. In addition to other powers, the commission may, after public notice and opportunity for hearing, prescribe rates for cable television service whenever:
"(e) Upon request by a municipality and cable television company that the commission prescribe applicable rates” (emphasis added).
Thus, under the circumstances, petitioner was effectively blocked from discussing the matter with municipal authorities, the public or the Commission, and seeks on this motion to compel respondents to hold public hearings, make formal factual findings and subsequently submit the finding to the Commission. Petitioner argues that respondents’ failure to do so constitutes an arbitrary and capricious denial of due process.
Respondents raise two defenses to this proceeding, claiming (1) that petitioner is getting a "fair rate” and a "fair return” at the present time, and (2) that no provision of law provides for a public hearing on the issue. Respondents cite several cases involving the Public Service Commission and utility companies in support of their position, but do not submit any law on point relating to the New York State Commission on Cable Television.
Petitioner cites several cases, none of which arise in New York under New York law. Thus, this court, after discovering no applicable New York law on point on its own initiative, is left in the position of treating this proceeding as a case of first impression.
Section 811 of the Executive Law sets forth the intent of the *100 Legislature in establishing the Commission on Cable Television, section 811 provides in part as follows: "There is therefore, a need for a state agency * * * to promote the rapid development of the cable television industry responsive to community and public interest * * * to assure that cable television companies provide adequate, economical and efficient service to their subscribers, the municipalities within which they are franchised and other parties to the public interest”.
Section 815 (subd [2], par [a]) of the Executive Law gives the Commission the duty to
"prescribe standards for procedures and practices which municipalities shall follow in granting franchises, which standards shall provide for * * * (iii) the holding of a public hearing, upon reasonable notice to the public and the commission, at which applicants and their proposals shall be examined and members of the public and interested parties are afforded a reasonable opportunity to express their views thereon”.
Section 822 of the Executive Law provides in part that: "2. A person wishing to transfer, renew or amend a franchise * * * shall file with the commission an application for approval of such change in such form and containing such information and supporting documents as the commission may require * * *. The commission may hold a public hearing on any such application * * * as set forth in subdivision two of section eight hundred twenty-one.”
Section 825 of the Executive Law provides in part as follows: "2. Such rates may not be changed except by amendment of the franchise.”
It must be noted that section 811 et seq. of the Executive Law became effective January 1, 1973 some 8V2 years after the execution of the franchise involved in this case, and that the original agreement could not have foreseen the rapid expansion of the cable television industry or the development of the Commission solely constituted for the regulation thereof.
Essentially petitioner seeks herein to compel review of its franchise agreement for the purpose of amending the rate provisions therein contained since under subdivision 2 of section 825 rates may only be changed by amendment of the franchise. Amendment of a franchise pursuant to subdivision 2 of section 822, can only be accomplished after filing with the *101 Commission an application for approval of the amendment together with supporting documents and information and proof of service upon the franchisor.
There is no proof or showing before this court that petitioner has filed with the Commission the application and supporting documents required by statute. There is merely a showing with reference to the requested rate increase, "that the State of New York Commission on Cable Television was promptly notified of this request, by letter dated May 3, 1976”. As a result, there is some doubt as to petitioner’s standing before this court due to petitioner’s failure to comply with this statute.
It is a fundamental principle of law that since a franchise constitutes a contract, the terms and conditions thereof are not subject to alteration without the consent of the holder unless the right of alteration has been reserved in the contract. Thus the municipality cannot make the conditions of the franchise more onerous without the consent of the franchisee. Likewise, the franchisee has no right to be relieved from the contract, and cannot insist that another agreement be made in place thereof because the franchisee has failed to make an advantageous bargain with the municipality. (36 Am Jur 2d, Franchises, § 51.)
Apparently, the legislators realized that existing law taken together with rapid expansion of the cable television industry and changing times would lead to grave inequities in long-term franchise agreements unless some review of rates was, from time to time, provided. Thus, they provided in subdivision 3 of section 825 in substance that no rate provision in a franchise agreement shall bind a municipality for more than 10 years and that existing franchises purporting to bind a municipality after January 1, 1983 shall have no further effect after that date.
In the instant case, the franchise agreement does not specifically provide for alteration or amendment or increase in rates during its initial term. The only reference in the franchise relative to increase in rates is set forth in paragraph 17 which provides "Any increase in rates shall be subject to review and approval by the Board of Trustees”.
While both franchisor and franchisee may have anticipated a possible increase in rates during the initial term by the above quoted words of the franchise itself, any application for rate increase is limited to final approval or rejection by *102 respondent Board of Trustees after review with no provision requiring a public hearing.
In the present case, based on this record, the court makes the following findings:
(1.) The franchise agreement dated June 1, 1964 provides for possible rate increases subject to review and approval by the Board of Trustees.
(2.) That there is no statutory provision or provision in the franchise agreement for a public hearing to be held by respondent as requested by petitioner and as a result cannot be mandated by this court.
(3.) The court finds that the rejection of an increase in rate based on the votes cast by the representatives of various municipalities at the Mohawk Valley Mayors’ Conference in Little Falls on April 27, 1976 or May 17, 1976 does not satisfy the terms of the franchise requiring review and approval by the respondent Board of Trustees since only Mayor Pumilio and Trustee Maneen were present. However, at a meeting of the respondent board on June 17, 1976, the decision of the respondent board to reject petitioner’s requested rate increase without a public hearing and without agreement to submit the controversy to the Commission under section 825 of the Executive Law was no denial of due process since there is no contractual obligation in the franchise or statutory provision in law mandating that a public hearing be held by respondents. Therefore, there is no basis to hold the denial by respondents to be arbitrary and capricious.
(4.) That petitioner and respondents are parties to a valid franchise agreement as stated above which provides for rate increase subject to review and approval by respondent Board of Trustees. The terms and conditions thereof are not subject to alteration without consent of the parties unless the right of alteration has been reserved in the franchise contract since, as here, the franchisee is bound by the terms of the contract and cannot be relieved by virtue of claiming that it made an unadvantageous contract.
(5.) The petitioner notified the Commission by letter dated May 3, 1976 of a requested rate increase. There is no evidence of filing of an application with the supporting documents required by subdivision 2 of section 822 of the Executive Law. Whether this relief is available to petitioner under a proper application with supporting documents requesting approval of a rate increase and a public hearing by the Commission based *103 on the respondent Board of Trustees’ rejection of the petitioner’s request is problematical by virtue of the provisions of subdivision 1 of section 822 of the Executive Law which in substance requires the approval of the Commission in addition to any municipal approval required by franchise or by law. There is no provision in article 28 of the Executive Law concerning the Commission which allows approval of an increase in rate by the Commission without approval of the municipal franchisor. Nor does the franchise provide relief in the event of lack of approval by respondent Board of Trustees.
(6.) From this record, the court cannot treat this motion under article 78 by way of mandamus to compel the respondent Board of Trustees to hold a public hearing for the reasons stated above. In the alternative, this court cannot, based on this record, validly judicially review the actions of the respondent Board of Trustees since petitioner has not exhausted its administrative remedies under the provisions of article 28 of the Executive Law, particularly section 822 thereof.
Based on the foregoing, petitioner’s request for the relief sought under this CPLR article 78 proceeding for an order compelling respondents to grant a public hearing to petitioner in regard to the requested rate increase and upon completion of the hearing, to prepare formal findings and a determination as to the amount of rate increase, if any, and the granting of a temporary increase to be held in escrow until final determination is made and approved by the New York State Commission on Cable Television is denied.